OPINION
Defendant-appellant Christopher Smith appeals his conviction and sentence from the Stark County Court of Common Pleas on one count of resisting arrest in violation of Revised Code Section 2921.33, a felony of the fourth degree. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
On September 3, 1998, the Stark County Grand Jury indicted appellant on one count of resisting arrest in violation of Revised Code Section 2921.33, a felony of the fourth degree, and three counts of aggravated menacing in violation of Revised Code Section2903.21, misdemeanors of the first degree. At his arraignment on October 23, 1998, appellant entered a plea of not guilty to all charges. Three days later, a written waiver of time waiving all statutory time limits for appellant's trial was filed. A second written waiver of time signed by appellant was filed on December 23, 1998. Thereafter, a jury trial commenced on March 16, 1999. The following evidence was adduced at trial. On July 31, 1998, Anthony Robert Marcantonio, appellant's employer at the time, contacted the Canton Police Department when he noticed that several checks were missing from his business. Mr. Marcantonio believed that appellant had stolen the checks. After contacting the police, Mr. Marcantonio proceeded to appellant's girlfriend's house in Massillon. Officer Timothy L. Casapini of the Massillon Police Department was sent to the address in Massillon to assist Mr. Marcantonio. At trial, Officer Casapini testified that "I was given a call by our dispatcher to assist a man at that address. His name was Mr. Marcantonio. And he had information that a Christopher Smith was at that residence. And he wanted to have contact with Mr. Smith referencing some stolen checks from his business. And also, I was informed by the dispatcher, that Canton P.D. had several traffic warrants for his arrest." Transcript of Proceedings, Vol. 1 at 196. When Officer Casapini and Mr. Marcantonio arrived at the Massillon residence, the two were met by appellant's girlfriend at the time, Vanessa Grissez. Grissez informed the officer that appellant was in the house. Since Officer Casapini had confirmed through the dispatcher that there were active warrants for appellant's arrest, he asked for Grissez's permission to enter the house to see if appellant was there. When Office Casapini entered the house, he was accompanied by Sergeant Charles Maier and Officer Cherry, who had arrived in response to Officer Casapini's call for backup. Office Casapini said that when he entered the house, "[t]he first thing I did was call out Chris Smith's name. I called his name, said that we were the Massillon Police and that we wanted to talk to him. I called out his name several times and identified us as police officers. I got no response." Transcript of Trial Proceedings, Vol. I at 199. Shortly thereafter, Sergeant Maier found appellant in a back room in the basement with a large knife. Sergeant Maier testified at trial that in addition to the knife, which was approximately one foot in length with an 8" blade, he noticed some blood which appeared to be from appellant's left wrist. Sergeant Maier further testified that it appeared that appellant's wrist had been slashed. When he saw the knife and the blood, Sergeant Maier called for assistance as well as for a medical unit. Maier further testified that it appeared that appellant's wrist had been slashed. Although Sergeant Maier asked appellant to drop the knife several times, "his response to me was that he wasn't going to come out. We were going to have to take him out." Transcript of Trial, Vol. II at 355. Sergeant Maier ordered appellant to drop the knife so that they could get appellant some medical attention for his self inflicted wound. After appellant, however, refused to comply, Sergeant Maier asked Officer Cherry to get him a shotgun. Once Officer Cherry retrieved the shotgun, he handed it to Officer Casapini. Officer Casapini testified at trial that the officers told appellant that "[w]e did have warrants for him but they were minor traffic warrants, that he was going to be arrested but he was going to be taken to the hospital for his injury, and that we did not want to see him get hurt. And he just refused our repeated demands to drop the knife. Several times he was told. And he also started walking towards us. He would walk towards us. He would go into our room and then he would back up. And then he would walk towards us again taking little small baby steps. And then we would start yelling at him to back up, that you're getting too close, drop the knife. And he still refused to have to do that." Transcript of Trial, Vol. 1 at 210. Despite the officers' repeated pleas with appellant to drop the knife, appellant refused to comply. Sergeant Maier testified at trial that after several other officers arrived on the scene, appellant "started moving back and forth. And he raised the knife up in this (indicating) manner several times. And he got into this room here. And this is where he was as I was talking to him. And he was moving back and forth." Transcript of Trial, Vol. II at 360 to 361. During the 25 minute ordeal, appellant "was taking a baby step forward and back and just kind of in a menacing manner. He had the knife up and then he would relax a little bit, then he would bring the knife up then relax a little bit." Transcript of Trial, Vol. II at 365. Although the officers permitted both appellant's girlfriend and appellant's employer to come downstairs and attempt to talk appellant into surrendering, appellant still refused to surrender. During his standoff with the officers, appellant "made the statement he wasn't going back to jail. He made the statement that he was going to charge us." Transcript of Trial, Vol. I at 211. Appellant also apologized for taking the checks from Marcantonio, his employer. Shortly after Mr. Marcantonio finished talking with appellant and left the room, appellant charged and lunged at the police officers in the basement room and area. Officer Casapini testified at trial that appellant "was taking small steps towards us with the knife up like this and then suddenly he just moved real fast." Transcript of Trial, Vol. II at 266. Casapini testified that appellant got within six feet of the officers and that, at such point, the officers fired their weapons, wounding appellant four times. Appellant, who was shot at close range of between four and six feet, then fell to the ground. After appellant attempted to get up, Officer David Bauschka put his foot on appellant's knife to prevent appellant from grabbing for the same and told appellant to please lay still, that the paramedics would soon arrive. Once the paramedics arrived on the scene, Officer Bauschka moved the knife away from appellant with his foot. At the conclusion of the evidence and testimony, the jury returned on March 19, 1999, with a verdict finding appellant guilty of resisting arrest in violation of Revised Code Section 2921.33, but not guilty of the three counts of aggravated menacing in violation of Revised Code Section 2903.21. Journal Entries memorializing the jury's verdict were filed on March 25, 1999. Thereafter, on March 26, 1999, appellant was sentenced to prison for 12 months on the charge of resisting arrest in violation of Revised Code Section 2921.33. The court further ordered that appellant's sentence be served consecutively to appellant's sentence in Stark County Court of Common Pleas, Case No. 1998CR1455. A Judgment Entry memorializing appellant's sentence was filed on April 2, 1999. It is from his conviction and sentence that appellant prosecutes his appeal raising the following assignment of error:
 WHETHER THE FINDING BY THE JURY THAT THE APPELLANT RESISTED ARREST WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 I
Appellant, in his sole assignment of error, contends that his conviction for resisting arrest in violation of R.C. Section2921.33 was against the manifest weight and sufficiency of the evidence. In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after reviewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jenks, supra, at paragraph two of the syllabus.
On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. . . The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." State v. Thompkins (1997), 78 Ohio St.3d 380, 387, citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. Based upon the facts set forth above, we do not find as a matter of law that appellant's conviction for resisting arrest in violation of R.C.2921.33 was based on insufficient evidence. Revised Code 2921.33
provides, in relevant part, as follows: "(C) No person, recklessly or by force, shall resist or interfere with the lawful arrest of the person or another person if either of the following applies:
 (2) The offender, during the course of the resistance or interference, brandishes a deadly weapon."
We find that, after reviewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime of resisting arrest proven beyond a reasonable doubt. While appellant argues that he was not aware that he was under arrest until after he was shot, Officer Casapini testified at trial that appellant was told that he had warrants outstanding for minor traffic violations, and that he was going to be arrested. Casapini further testified that appellant "made the statement he wasn't going back to jail." Transcript of Trial, Vol. 1 at 211. There was also evidence in the record that appellant, when he lunged at the officers, brandished a deadly weapon in the form of a knife which was approximately one foot in length with an 8" blade. While appellant contends that the knife was not in appellant's hand when appellant went down, Officer Bauschka testified at trial that after appellant was shot, he moved the knife away from appellant after the shooting. Appellant also maintains that he never charged or threatened the officers and, therefore, should not have been found guilty of resisting arrest. In support of his argument, appellant points out that there was no evidence that any blood drippings from appellant's wound were in close proximity to the officers. The only blood drippings were located in the back room of the basement. According to appellant, such facts are crucial since they "show that Appellant was acting passively and was stationary in the back room" and was not in such close proximity to the officers for them to feel that he was resisting arrest. However, appellant's argument is contradicted by the officers' testimony at trial. For example, Sergeant Maier testified at trial that appellant repeatedly raised the knife up in a threatening manner. Moreover, Officer Casapini testified that appellant, who threatened to charge the officers, was shot only after appellant "moved real fast" towards the officers with a raised knife. In short, we find based upon the facts set forth above, that any rational trier of fact could have found that appellant recklessly or by force resisted or interfered with his lawful arrest by the Massillon Police officers while brandishing a deadly weapon in the form of a knife. As is stated above, appellant also challenges his conviction for resisting arrest on the basis that it is against the manifest weight of the evidence. While appellant appears to challenge the officers' testimony and points to alleged inconsistencies in the same regarding, for example, the location of the knife, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. The jury, as trier of fact, had an opportunity to observe the officers' demeanor and weigh their credibility. Clearly, the jury found the officers' testimony as to the events of July 31, 1998, to be credible. There is no evidence that the jury, as trier of fact, clearly lost its way in creating such a manifest miscarriage of justice that the judgment must be reversed. Based on the foregoing, we do not find that appellant's conviction for resisting arrest in violation of R.C. 2921.33 was based on insufficient evidence or that his conviction was against the manifest weight of the evidence. Appellant's sole assignment of error is, therefore, overruled.
The Judgment of the Stark County Court of Common Pleas is affirmed.
 _______________________________ EDWARDS, J.
HOFFMAN, P.J. and FARMER, J. CONCUR.